**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANDREW WITTMER, ADAM CLAYTON, PENNY ELLER and TYRON WALLACE, Individually and as representatives of a Class of Participants and Beneficiaries of the ADM 401(k) and Employee Stock Ownership Plan for Salaried Employees and ADM 401(k) and Employee Stock Ownership Plan for Hourly Employees Savings Plan for Management Employees,<br><br>Plaintiffs,<br><br>v.<br><br>ARCHER-DANIELS-MIDLAND COMPANY, and JOHN DOES 1-10,<br><br>Defendants. | Case No: ________________<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1. Plaintiffs Andrew Wittmer, Adam Clayton, Penny Eller and Tyron Wallace ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the ADM 401(k) and Employee Stock Ownership Plan for Salaried Employees ("Salaried Plan") and ADM 401(k) and Employee Stock Ownership Plan for Hourly Employees ("Hourly Plan") (collectively the "Plans"), by their counsel, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

**INTRODUCTION**

2. This is a civil action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., brought on behalf of the ADM 401(k) and Employee Stock Ownership Plan for Salaried Employees ("Salaried Plan") and the ADM 401(k) and Employee

Stock Ownership Plan for Hourly Employees ("Hourly Plan") (collectively, the "Plans") against Archer-Daniels-Midland Company ("ADM or the Company") and John Does 1-10 (collectively "Defendants").

3. ERISA requires fiduciaries to discharge their duties solely in the interests of plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration. 29 U.S.C. § 1104(a)(1)(A).

4. During the period October 2020 through the present (the "Class Period"), Defendants exercised discretionary authority over the allocation and use of forfeited Plan assets generated when participants terminated employment before becoming fully vested in certain employer-contribution accounts.

5. The governing Plan documents expressly authorized forfeitures to be used either to reduce future employer contribution obligations or to pay Plan administrative expenses. Because the Plans permitted more than one permissible use of forfeitures, Defendants were required to exercise fiduciary judgment when determining how such forfeitures would be allocated.

6. Rather than employing a prudent and loyal process, Defendants repeatedly allocated forfeited Plan assets in a manner that reduced the Company's financial obligations while participants continued to bear substantial administrative expenses.

7. During the Class Period, the Plans were among the largest defined-contribution retirement plans in the United States. As of December 31, 2025, the Salaried Plan reported approximately $2.558 billion in net assets available for benefits and 11,274 participants with account balances. As of December 31, 2025, the Hourly Plan reported approximately $788.1

million in net assets available for benefits, 12,273 participants entitled to benefits, and 11,894 participants with account balances. Together, the Plans held more than $3.3 billion in retirement assets.

8. The Plans also incurred substantial administrative expenses. For 2025 alone, the Salaried Plan reported approximately $607,011 in administrative expenses, while the Hourly Plan reported approximately $937,404 in administrative expenses.

9. Notwithstanding the existence of substantial forfeiture balances and the availability of forfeitures to pay Plan expenses, Defendants continued using forfeitures in a manner that reduced ADM's contribution obligations while participants remained responsible for administrative costs.

10. Plaintiffs seek relief on behalf of the Plans under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), as well as appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

12. This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

13. Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

## PARTIES

**Plaintiffs**

14. Plaintiff Andrew Wittmer is a resident of the State of Illinois, and during the Class Period was a participant in the Hourly Plan under ERISA § 3(7), 29 U.S.C. § 1002(7).

15. Plaintiff Adam Clayton is a resident of the State of Illinois, and during the Class Period was a participant in the Hourly Plan under ERISA § 3(7), 29 U.S.C. § 1002(7).

16. Plaintiff Penny Eller is a resident of the State of Illinois, and during the Class Period was a participant in the Salaried Plan under ERISA § 3(7), 29 U.S.C. § 1002(7).

17. Plaintiff Tyron Wallace is a resident of the State of Illinois, and during the Class Period was a participant in the Hourly Plan under ERISA § 3(7), 29 U.S.C. § 1002(7).

18. Plaintiffs have Article III standing to bring this action on behalf of the Plans because they suffered actual injuries-in-fact through the misallocation of the Plans' forfeitures by Defendants with regard to the Plans during the Class Period by not having Plans' forfeitures utilized to pay at least some of their Plans' administrative expenses. Those injuries are fairly traceable to Defendants' unlawful conduct in using Plans' forfeitures for their own benefit through reduced employer contributions, and those harms are likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiffs and to the Class.

19. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), on behalf of the Plans and for relief that sweeps beyond their own injuries.

20. The Plaintiffs and the participants in the Plans did not have knowledge of all material facts (including, among other things, the misallocation of Plans' forfeitures) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

21. Having never managed a very large 401(k) plan, Plaintiffs, and all participants in the Plans, lacked actual knowledge of how Plans' forfeitures should be allocated.

**Defendants**

22. Defendant ADM maintains its principal place of business in Illinois, at 4666 E. Faries Parkway, Decatur, Illinois 62536.

23. ADM is the Plans' sponsor under 29 U.S.C. § 1002(16)(B) and Plans' administrator under 29 U.S.C. § 1002(16)(A). ADM also is the named fiduciary of the Plans under 29 U.S.C. § 1102(a)(2). ADM served in these roles throughout the Class Period.

24. As alleged herein, ADM exercised discretionary authority or discretionary control over the administration and management of the Plans, exercised authority or control over the management or disposition of the Plans' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plans and, accordingly, was a fiduciary to the Plans under 29 U.S.C. § 1002(21)(A)(i) and (iii).

25. John Does 1-10 are unknown employees, agents, and/or delegates of ADM who exercised discretionary authority or discretionary control over the administration and management of the Plans, exercised authority or control over the administration, management or disposition of Plans' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plans and, accordingly, were fiduciaries to the Plans under 29 U.S.C. § 1002(21)(A)(i) and (iii). Plaintiffs will seek leave to amend the Complaint to name each of these John Does once they ascertain their identities. They are referred to herein within the definition of "ADM."

**ERISA'S PURPOSE AS APPLIED TO DEFINED CONTRIBUTION PLANS**

26. ERISA was enacted to protect the interests of retirement plan participants and beneficiaries. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

27. Defined contribution plans, such as 401(k) plans, are now the primary retirement savings vehicle for most Americans, covering more than 121 million participants. These plans provide individual accounts for participants and offer tax advantages to both employees and employers. Account balances consist of employee contributions, employer contributions, investment earnings, and are reduced by plan expenses.

28. Employers also benefit from sponsoring retirement plans because they help attract and retain employees, making such plans an important component of compensation.

29. It has long been understood that participants benefit when contributions and other plan assets are allocated and invested as quickly as possible, allowing them to begin earning investment returns sooner.

30. Consistent with this principle, ERISA, Department of Labor guidance, and IRS guidance require prompt allocation and investment of participant contributions and discourage holding plan assets in unallocated accounts where they earn little or no return.

31. Delaying the allocation or investment of forfeited plan assets can benefit the employer while depriving participants of potential investment earnings.

32. The Plans' expenses also have a significant impact on retirement outcomes. According to the Department of Labor, a 1% increase in fees over a 35-year career can reduce retirement savings by approximately 28%, and over a 40-year career can cost participants hundreds of thousands of dollars.

## ERISA FIDUCIARY STANDARDS

33. ERISA imposes the highest fiduciary duties recognized by law, requiring plan fiduciaries to act solely and exclusively in the interests of plan participants and beneficiaries. 29 U.S.C. § 1104(a)(1). Fiduciaries must act with loyalty, prudence, care, skill, and diligence, and may follow plan documents only to the extent those documents comply with ERISA. Compliance

with plan terms does not excuse a fiduciary from its statutory duties. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014).

34. ERISA's duty of loyalty prohibits fiduciaries from acting in their own interests or allowing conflicts of interest to influence plan decisions. *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995). The duty of prudence requires fiduciaries to conduct a thorough and reasoned investigation before making decisions affecting the plan. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107-08 (2d Cir. 2021).

35. ERISA also prohibits self-dealing and transactions that improperly benefit fiduciaries or other parties-in-interest. 29 U.S.C. § 1106(a)-(b). These prohibitions are intended to prevent fiduciaries from exercising plan authority when their personal or corporate interests conflict with the interests of participants. *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995).

36. In addition, ERISA imposes co-fiduciary liability on fiduciaries who knowingly participate in, enable, conceal, or fail to remedy another fiduciary's breach. 29 U.S.C. § 1105(a).

## STATEMENT OF FACTS

37. Plaintiffs are "participants" in defined-contribution plans under ERISA Section 3(7), 29 U.S.C. § 1002(7).

38. The Plans are defined contribution plans pursuant to 29 U.S.C. §§ 1002(2)(A) and (34) and were created by ADM exclusively for its employees. Accordingly, the Plans provide "for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. §1002(34).

39. In accordance with 29 U.S.C. § 1103(a), the assets of the Plans are held in a trust fund "for the purpose of holding the assets of and funding the benefits provided by the Plan."

40. As an individual account, defined contribution retirement plan, a participant's retirement benefit in the Plans equals: (1) the amount of the participants' voluntary contributions; *plus* (2) the amount of any employer contributions; *plus* (3) any investment returns on those contributions; *minus* (4) plan and investment expenses.

41. As the employer and sponsor of the plan (also known as the settlor as that meaning is understood from trust law and used by the DOL in guidance), ADM drafted and amended the Plans and intended it comply with the requirements of ERISA and the Internal Revenue Code of 1986, as amended.

42. The Plans were created and funded several years prior to the Class Period. The Plans are funded by a combination of wage withholdings by Plans' participants and employer contributions, each of which is deposited into the Plans' trust funds.

43. Participants in the Plans are fully and immediately vested with regard to their own contributions and earnings thereon to their individual accounts in the Plans.

44. Upon information and belief, ADM typically makes the settlor decision about the amount of company matching contributions sometime in the fourth quarter of a plan year or very early in the beginning of the next plan year.

45. Upon information and belief, participants are fully vested when they make their elective contributions. According to the SEC Form 11-Ks, matching and non-elective contributions vest over a two-year period.

46. Upon their deposit into the Plans' trust funds, all participant contributions and company contributions become assets of the Plans.

47. According to the 11-Ks:

> Participants forfeit their nonvested balances upon the earlier of the full distribution of their vested account following termination of employment or a break in service

> of five years. If a participant receives a distribution of his or her vested account, and the participant is rehired before incurring a five-year break in service, any nonvested balance that previously was forfeited will be reinstated if the participant repays the vested balance that was distributed. Forfeited balances of terminated participant's nonvested accounts are applied to pay administrative expenses, used to reduce employer contributions, or otherwise applied in accordance with the terms of the applicable plan.

48. The use of the word "or" in the foregoing Plan language provides the fiduciaries with discretion. Accordingly, when the time came to actually exercise the discretion provided by the Plans, to determine whether forfeitures would be allocated toward Plan administrative expenses or toward reducing ADM's employer contributions, those decisions were made in a fiduciary capacity.

49. The Plans permitted fiduciaries to use forfeited Plan assets for either of two purposes: (1) to pay Plan administrative expenses that otherwise would be charged to participants, or (2) to reduce ADM's future employer contributions. The choice between these alternatives was entirely discretionary.

50. Throughout the Class Period, participants were charged administrative fees, which reduced the assets available in their retirement accounts for investment and future growth.

51. At the same time, the fiduciaries exercised their discretion in only one direction. Rather than use forfeited Plan assets to offset or eliminate participant-paid administrative expenses, they consistently used those assets to reduce ADM's contribution obligations. As a result, participants continued to bear Plan expenses that could have been paid with forfeited Plan assets, while ADM received the full economic benefit of reduced employer contributions.

52. There was no Plan requirement, priority rule, or legal obligation requiring forfeitures to be used for employer contributions instead of participant expenses. The fiduciaries

therefore faced a discretionary choice between benefiting the Plans' participants or benefiting ADM. During every year of the Class Period, they chose to benefit ADM.

53. This decision harmed participants twice. First, participants paid administrative expenses that forfeited assets could have covered. Second, those deductions reduced the funds available for investment, depriving participants of the compounding investment returns those assets would otherwise have generated over time. Meanwhile, ADM benefited by preserving corporate assets and reducing its contribution costs, despite earning annual profits ranging from more than $1 billion to over $4 billion during the Class Period.

**BREACH OF THE DUTY OF LOYALTY**

54. According to the SEC Form 11-Ks filed during the Class Period, forfeitures were "used to reduce employer contributions" without any mention of reducing the Plans' administrative expenses.

55. The language in the Audited Financials of the Plans from 2020-2025 attached to the Form 5500s show that the fiduciaries of the Plans had fiduciary discretion to use the Plans' forfeited funds for employer contributions or to pay the Plan's administrative expenses but used the Plans' forfeitures in a discretionary matter to reduce employer contributions.

56. The following chart shows ADM's use of forfeiture allocations from 2020 to 2025:

| Year | Salaried Forfeitures Used for Employer Contributions | Hourly Forfeitures Used for Employer Contributions | Combined Forfeitures | Salaried Admin Expenses | Hourly Admin Expenses | Combined Admin Expenses |
|---|---|---|---|---|---|---|
| 2020 | 348,718 | 1,291,792 | 1,640,510 | 421,003 | 727,355 | 1,148,358 |
| 2021 | - | - | - | 413,157 | 659,823 | 1,072,980 |
| 2022 | 1,345,492 | 3,662,250 | 5,007,742 | 416,210 | 727,011 | 1,143,221 |
| 2023 | 1,350,625 | 2,269,917 | 3,620,542 | 279,883 | 674,565 | 954,448 |
| 2024 | 1,177,139 | 3,329,230 | 4,506,369 | 287,581 | 675,770 | 963,351 |
| 2025 | 1,493,009 | 3,185,608 | 4,678,617 | 607,011 | 937,404 | 1,544,415 |

57. Using forfeitures to reduce future employer contributions generally benefits ADM because it lowers the company's contribution obligations and preserves corporate assets. By contrast, using forfeitures to pay the Plans' expenses benefits participants by reducing or eliminating charges to their retirement accounts.

58. The only circumstance in which reducing employer contributions could benefit participants is if ADM faced a genuine risk of being unable to satisfy its contribution obligations. No such risk existed here. Throughout the Class Period, ADM generated billions of dollars in annual profits and had ample resources to fully fund its Plan obligations without relying on participant forfeitures.

59. As a result, Defendants faced a clear conflict of interest. They had discretion to use forfeitures either to benefit participants by paying the Plans' expenses or to benefit ADM by reducing its contribution costs. Defendants consistently chose to benefit ADM.

60. By directing forfeitures exclusively toward reducing ADM's contributions, while participants continued to pay the Plans' expenses from their own accounts, Defendants used Plan assets to advance ADM's financial interests rather than the interests of the Plans' participants and beneficiaries. The pattern of decisions reflects self-interest, not loyalty to the Plans' participants.

**ERISA'S DUTY OF PRUDENCE AS APPLIED TO FORFEITED PLAN ASSETS**

61. The Plans expressly permitted forfeitures to be used either to defray Plan expenses or to reduce employer contributions. Because the Plans granted fiduciaries discretion between these alternatives, ERISA required them to employ a prudent process to determine which use best served the interests of participants and beneficiaries.

62. Using forfeitures to pay Plan expenses was fully consistent with the Plans' terms and with long-standing IRS guidance recognizing that timely use of forfeitures may reduce

participant expenses. A fiduciary who chooses to apply forfeitures to Plan expenses is therefore carrying out, not expanding, the options contemplated by the Plan sponsor.

63. When exercising this discretion, Defendants were required to act solely in the interests of participants and beneficiaries. Unlike ADM's settlor decisions regarding the amount of future employer contributions, the fiduciaries' decisions regarding the disposition of forfeited Plan assets were fiduciary acts governed by ERISA's duties of loyalty and prudence.

64. A prudent fiduciary would have considered whether participants would be better served by using forfeitures to pay Plan expenses rather than to reduce ADM's contribution obligations. Defendants did not do so. Throughout the Class Period, they allocated all forfeitures to reduce ADM's contributions while allowing administrative expenses to be charged directly against participants' accounts.

65. The facts support a reasonable inference that Defendants either failed to undertake any meaningful analysis of participants' interests or employed a fundamentally flawed decision-making process. Had they conducted a prudent investigation, they would have recognized that using forfeitures to pay Plan expenses would immediately and directly benefit participants by reducing account-level charges and preserving assets for investment.

66. No facts justified prioritizing ADM's interests over those of participants. During the Class Period, ADM generated annual revenues of approximately $64 billion to $101 billion and annual profits ranging from approximately $1.08 billion to $4.34 billion. The amount necessary to pay the Plans' administrative expenses represented only a tiny fraction of ADM's profits, approximately 0.03% to 0.14% annually. There was no realistic risk that ADM would be unable to satisfy its contribution obligations absent the use of forfeitures.

67. Nevertheless, Defendants used forfeitures exclusively to reduce ADM's contribution costs, saving ADM millions of dollars while participants continued to bear Plan expenses from their own retirement accounts. By directing Plan assets to benefit ADM rather than participants, Defendants acted contrary to ERISA's fiduciary obligations and engaged in the very type of conflicted decision-making that ERISA prohibits.

68. As a result, participants suffered more millions of dollars in avoidable expenses during the Class Period, while ADM retained millions of dollars that otherwise would have been contributed to the Plans or used to reduce participant-borne costs.

**FAILURE TO USE UNALLOCATED FORFEITED PLAN ASSETS**

69. The fiduciaries had a fiduciary duty to monitor and timely allocate the Plans' forfeitures. At a minimum, a prudent fiduciary would have regularly determined the amount of unallocated forfeitures available and evaluated how those assets could be used solely in the interests of participants and beneficiaries.

70. Instead, despite possessing millions of dollars in unallocated forfeitures and having express authority under the Plans to use those assets to defray the Plans' expenses, the fiduciaries repeatedly allowed forfeitures to remain unused while participants continued to pay administrative expenses from their own accounts.

71. This conduct is inconsistent with any prudent fiduciary process. A prudent fiduciary would not permit substantial assets of the Plans to accumulate in a forfeiture suspense account when those same assets could immediately reduce participant-borne expenses. The amount of forfeitures available at year-end regularly exceeded the amount necessary to defray some or all the Plans' administrative expenses.

72. The fiduciaries never used forfeitures to pay the Plans' expenses during the Class Period. Nor is there any indication that it investigated whether participants would be better served

by using forfeitures for that purpose, or whether any circumstances justified allowing forfeitures to remain unallocated while participants paid millions of dollars in Plan expenses.

73. The repeated failure to deploy available forfeitures for participant benefit supports the inference that the fiduciaries either employed no meaningful decision-making process or relied on a fundamentally flawed one. Had Defendants undertaken a prudent investigation, they would have recognized that using forfeitures to defray Plan expenses would have directly benefited participants by reducing account-level charges and preserving assets for investment.

74. Plaintiffs do not contend that ERISA prohibits fiduciaries from ever using forfeitures to offset employer contributions. Rather, under the specific facts alleged here, the Plan granted discretion, participants were paying Plan expenses, substantial forfeitures were available, and ADM had ample financial resources to satisfy its contribution obligations. Under those circumstances, a prudent fiduciary acting solely in participants' interests would have given meaningful consideration to using forfeitures to reduce participant expenses.

75. By failing to do so, Defendants caused participants to bear millions of dollars in expenses that could have been paid with existing Plan assets and denied participants the additional benefits and reduced expenses those forfeitures were intended to provide. The totality of the circumstances supports the reasonable inference that the fiduciaries breached their fiduciary duty of prudence in administering the Plans' forfeitures.

**PROHIBITED TRANSACTIONS**

76. ERISA's prohibited-transaction provisions impose categorical restrictions designed to protect plan assets from conflicts of interest and insider dealings. *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000). Section 406(a)(1)(D) prohibits fiduciaries from causing a plan's assets to be transferred to, or used for the benefit of, a

party in interest, while Section 406(b) prohibits fiduciaries from dealing with plan assets in their own interest or on behalf of parties whose interests are adverse to plan participants.

77. ADM is a party in interest because it is the employer sponsoring the Plans. By directing forfeited Plan assets to reduce ADM's future contribution obligations, Defendants used Plan assets to satisfy expenses that ADM otherwise would have paid from its own corporate funds. That decision conferred a direct financial benefit on ADM and relieved it of millions of dollars in contribution costs.

78. This was not a mere internal accounting entry. The allocation of forfeitures altered ADM's financial obligations and produced a tangible economic benefit for the Company. A fiduciary's decision to apply Plan assets in a manner that reduces an employer's contribution obligations constitutes a use of Plan assets for the benefit of a party in interest within the meaning of ERISA § 406(a)(1)(D).

79. The same conduct also constitutes prohibited self-dealing under § 406(b). Defendants exercised discretionary authority over Plan assets and repeatedly used those assets to advance ADM's financial interests rather than the interests of Plan participants. While ADM received millions of dollars in contribution relief, participants continued to bear Plan expenses that could have been paid with those same forfeited assets.

80. Accordingly, Defendants caused Plan assets to be used for the benefit of a party in interest and dealt with Plan assets in a manner that favored ADM over the Plans and their participants. Such conduct falls squarely within the prohibitions of ERISA §§ 406(a) and 406(b).

## CLASS ACTION ALLEGATIONS

81. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary’s liability to the Plan under 29 U.S.C. § 1109(a).

82. In acting in his representative capacity for the Plans, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plans.

83. Plaintiffs seek to certify, and to be appointed as representative of, the following Class:

> All participants and beneficiaries of the ADM 401(k) and Employee Stock Ownership Plan for Salaried Employees and ADM 401(k) and Employee Stock Ownership Plan for Hourly Employees (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plans) beginning October 26, 2020 to the Present.

84. The Class includes approximately 24,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

85. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plans and took the actions and omissions alleged as to the Plans and not as to any individual participant.

86. Common questions of law and fact include but are not limited to the following:

a. Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b. Whether Defendants breached their fiduciary duties to the Plans and engaged in prohibited transactions;

c. What are the losses to the Plans resulting from each breach of fiduciary duty and prohibited transaction; and

d. What Plan-wide equitable and other relief the Court should impose considering Defendants' breach of fiduciary duty and prohibited transactions.

87. Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were a participant of the Plans during the time period at issue and all participants in the Plans were harmed by Defendants' misconduct.

88. Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plans during the Class period, have no interests that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

89. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plans and personal liability to the Plans under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plans would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

90. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

91. Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

## FIRST CLAIM FOR RELIEF
## Breach of Duty of Loyalty

92. Plaintiffs restate the above allegations as if fully set forth herein.

93. Defendants are fiduciaries of the Plans under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

94. Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plans "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

95. Defendants have continually breached this duty of loyalty with respect to their control and management of the Plans' assets throughout the Class Period by choosing to utilize forfeited funds in the Plans for the exclusive benefit of ADM rather than solely in the interest of the Plans' participants and beneficiaries.

96. Instead of acting solely in the interest of the Plan's participants by utilizing forfeited funds in the Plans to reduce or eliminate Plan expenses, Defendants chose to use the Plans' assets for the exclusive purpose of reducing ADM's contributions to the Plans, thereby saving ADM millions of dollars at the expense of the Plans and their participants, who were forced to incur avoidable Plan expense deductions to their individual accounts.

97. In making these forfeiture decisions, Defendants were motivated primarily or exclusively by their own self-interest rather than the interests of the Plans' participants and beneficiaries, in violation of ERISA's fiduciary duty of loyalty.

98. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plans suffered injury and loss for which they are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the

disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

**SECOND CLAIM FOR RELIEF**
**Breach of Duty of Prudence**

99. Plaintiffs restate the above allegations as if fully set forth herein.

100. Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plans "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

101. Defendants have continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by declining to use the forfeited funds in the Plans to eliminate or reduce the Plans' expenses charged to participant accounts and instead used the Plans' forfeitures to reduce ADM's contributions to the Plans.

102. In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by their forfeitures allocation decisions, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plans to reduce the Company's own contributions, as opposed to the Plans' expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these forfeiture assets after considering all relevant factors.

103. By refusing to use forfeited funds in the Plans to eliminate or reduce the Plans' expenses charged to participant accounts, and instead deciding to use the Plans' forfeiture to reduce ADM's employer contributions to the Plans, Defendants caused the Plans to receive fewer contributions that would otherwise have increased Plan's assets and caused participants to incur

expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses, as discretionarily permitted under the Plans documents.

104. Defendants also breached their duty of prudence by failing to follow the Plans itself, as well as IRS guidance, both of which make clear that the Plans should have allocated all the Plan's forfeitures by the end of each Plan year.

105. On December 31st of each year, the Plans' forfeitures that accrued throughout the prior calendar year become outstanding and unpaid amounts owing to the Plan.

106. Both the Plan's language and IRS guidance make clear that ADM was required to monitor plan forfeitures and exhaust such forfeitures on a yearly basis. If a suspense account is used, as it was with the Plans, then ADM should have ensured that all forfeitures for the Plan years were promptly exhausted by year end or close to year end.

107. Defendants violated their fiduciary duty of prudence by not using their forfeiture suspense account as instructed by the Plan and the IRS, thereby causing Plaintiffs and other of the Plan's members to be denied additional benefits and/or reduced Plan expenses.

108. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

**THIRD CLAIM FOR RELIEF**
**Fiduciary Prohibited Transactions**

109. Plaintiffs restate the above allegations as if fully set forth herein.

110. 29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

111. Defendants violated this prohibition in its management and control of forfeitures in the Plans. By allocating these Plans' assets toward reducing ADM's contributions owing to the Plan, thereby saving ADM tens of millions of dollars in contribution expenses from their own corporate treasury, Defendants dealt with the assets of the Plan in ADM's own interest and for their own account.

112. Defendants' reallocation of plan assets to reduce ADM's own contribution is a 'use' of plan assets for the purposes of § 1106(a)(1).

113. As a result of this prohibited conduct, Defendants caused the Plans to suffer losses in the amount of the Plans' assets that were substituted for employer contributions and the lost investment returns on those assets.

114. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plans any losses to the Plans resulting from the prohibited conduct alleged in this claim, to restore to the Plans all assets and profits obtained through the use of Plans' assets and is subject to other equitable or remedial relief as appropriate.

**FOURTH CLAIM FOR RELIEF**
**Party-In-Interest Prohibited Transactions**

115. Plaintiffs restate the above allegations as if fully set forth herein.

116. 29 U.S.C. § 1106(a)(1)(D) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction

constitutes a direct or indirect - transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

117. Defendants, as fiduciaries of the Plans, caused the Plans to engage in a transaction that used the assets of Plans for the benefit of a party in interest, ADM, by using Plans' forfeitures to reduce the future employer contributions of ADM during the Class Period.

118. Defendants' reallocation of plan assets to reduce its own contribution is "dealing with" plan assets for the purposes of § 1106(b)(1).

119. By allocating the Plans' forfeitures to be used for the benefit of reducing future employer contributions, Defendants misused millions of dollars of the Plans' forfeitures which could have been reallocated instead to pay Plan expenses.

120. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plans any losses to the Plans resulting from the prohibited conduct alleged in this claim, to restore to the Plans all assets and profits obtained through the use of Plans' assets and is subject to other equitable or remedial relief as appropriate.

**FIFTH CLAIM FOR RELIEF**
**Failure to Adequately Monitor Other Fiduciaries**

121. Plaintiffs restate the above allegations as if fully set forth herein.

122. Defendants had the authority to appoint and remove members or individuals responsible for the Plans' forfeitures and knew or should have known that these fiduciaries had critical responsibilities for the Plans.

123. In light of this authority, Defendants had a duty to monitor those individuals responsible for the Plans' forfeitures to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plans in the event that these individuals were not fulfilling those duties.

124. Defendants had a duty to ensure that the individuals responsible for the Plans' forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plans' forfeitures; and reported regularly to Defendants.

125. The objectively disloyal, imprudent, and conflicted manner in which Defendants managed the Plans' forfeitures inferentially establish that Defendants breached their duty to monitor by, among other things:

a) Failing to monitor and evaluate the performance of individuals responsible for the Plans' forfeitures or have a system in place for doing so, standing idly by as the Plans misallocated the Plans' forfeiture for ADM's benefit;

b) Failing to monitor the process by which individuals responsible for the Plans' forfeitures were evaluated and failing to investigate the proper use of Plans' forfeitures; and

c) Failing to remove individuals responsible for the Plans' forfeitures whose performance was inadequate in that these individuals continued to misallocate the Plans' forfeitures for the benefit of ADM.

126. As the consequences of the breaches of the duty to monitor for the Plans' forfeitures, the Plaintiffs and the Plans' participants suffered millions of dollars of objectively unreasonable and unnecessary monetary losses.

127. Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants are liable to restore to the Plans all losses caused by their failure to adequately monitor individuals responsible for the Plans' forfeitures. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

a) An order certifying this action as a class action pursuant to Rule 23(b)(1) or, alternatively, Rule 23(b)(2) of the Federal Rules of Civil Procedure.

b) Appointment of Plaintiffs as Class Representatives and appointment of Plaintiffs' counsel as Class Counsel.

c) A declaration that Defendants breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA.

d) An order requiring Defendants to restore to the Plans all losses resulting from their fiduciary breaches and prohibited transactions, including losses arising from the misallocation of Plan forfeitures, and to disgorge all profits gained through the misuse of Plan assets, together with all investment earnings participants would have received absent Defendants' misconduct.

e) An order requiring ADM to disgorge all profits derived from the Plans and awarding appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including an accounting for profits, surcharge, constructive trust, or any other remedy necessary to prevent unjust enrichment.

f) A permanent injunction prohibiting Defendants from further violations of ERISA's fiduciary duties and prohibited-transaction provisions.

g) Such other equitable relief as the Court deems appropriate to remedy Defendants' misconduct and enforce ERISA, including removal of breaching fiduciaries and appointment of an independent fiduciary to administer the Plans.

h) An award of pre-judgment interest.

i) An award of attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 1132(g), the common fund doctrine, and any other applicable law.

j) Such other and further relief as the Court deems just and proper.

Dated: October 26, 2026

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: <u>*/s/ Ellen Noteware*</u>
Ellen Noteware
Mark S. Reich*
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: enoteware@zlk.com

Adam Hill
**LEVI & KORSINSKY, LLP**
500 Fifth Avenue, 42nd Floor
New York, NY 10110
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: ahill@zlk.com

Arvind Khurana*
**KHURANA LAW FIRM, P.C.**
16 Madison Square West, 11th Floor
New York, NY 10010
Telephone: (212) 847-0145
Email: akhurana@khuranapc.com

Jennifer S. Czeisler*
Edward W. Ciolko*
Jennifer J. Sosa*
**STERLINGTON, PLLC**
228 Park Avenue South, Suite 97956
New York, New York 10003
(212) 433-2993
Email: jen.czeisler@sterlingtonlaw.com
Email: edward.ciolko@sterlingtonlaw.com
Email: jenn.sosa@sterlingtonlaw.com

*Attorneys for Plaintiffs and Proposed Class*

**pro hac vice* forthcoming